# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JODY LYNN COOPSHAW, and
ROBERT LARRY THORNTON,
as Next Friend of ALEXIS PAIGE
ARECENA, a Minor

        Plaintiffs,

v.

DETECTIVE SERGEANT JOHN
FIGURSKI, individually, of the Michigan
State Police; FIRST LIEUTENANT
STEVEN FARRELL, individually, of the
Michigan State Police;
IRV SHAW, officially and individually, of
the Lenawee County Prosecutor's
Office; and COUNTY OF LENAWEE,
a governmental entity,

        Defendants.

_____/

Case: 2:06-cv-13246
Assigned To: Borman, Paul D
Referral Judge: Scheer, Donald A
Filed: 07-18-2006 At 03:03 PM
CMP COOPSHAW, ET AL V FIGURSKI, ET
AL (EW)

Courtney E. Morgan, Jr. (P29137)
Brian J. Nagy (P65542)
Attorneys for Plaintiffs
Morgan & Meyers, PLC
3200 Greenfield, Suite 260
Dearborn, MI 48120-1802
(313) 961-0130

_____/

## COMPLAINT AND JURY DEMAND

NOW COMES the above-named Plaintiffs, JODY LYNN COOPSHAW, and

ROBERT LARRY THORNTON, as Next Friend of ALEXIS PAIGE ARECENA, a Minor,

by and through their attorneys, MORGAN & MEYERS, PLC, and for their Complaint

against the above-named Defendants, state as follows:

## JURISDICTION

1.     At all times pertinent to this complaint, Plaintiff Jody Lynn Coopshaw was a resident at 1897 West Maumee Street, Apartment A6, of the City of Adrian, County of Lenawee, State of Michigan.

2.     At all times pertinent to this complaint, Alexis Page Arecena was a resident at 1897 West Maumee Street, Apartment A6, of the City of Adrian, County of Lenawee, State of Michigan.

3.     Plaintiff Robert Larry Thornton is a resident of Lenawee County and has petitioned the Court in a supplemental motion to be the Next Friend to Alexis Paige Arecena, a minor.  Mr. Thornton is the father of Jody Lynn Coopshaw and the grandfather of Alexis Paige Arecena.

4.     Plaintiff Jody Lynn Coopshaw is the mother of Alexis Paige Arecena and Jesalynn Simons.

5.     Defendant, Detective Sergeant Figurski, is an individual who, at all times pertinent hereto, was an officer of the Michigan State Police acting under color of state law.

6.     Defendant, First Lieutenant Steven Farrell, is an individual who, at all times pertinent hereto, was an officer of the Michigan State Police acting under color of state law.

7.     Defendant, Irv Shaw, is an individual who, at all times pertinent hereto, was an attorney for Lenawee County acting under color of state law.

8.     Defendant, Lenawee County, is a governmental entity established and existing under the laws of the State of Michigan.

2

9. The acts giving rise to this action occurred in whole or in part, in the County of Lenawee, State of Michigan.

10. All of the individuals named in this action were acting under color of state law and within the course and scope of their duties at the time the events that form the basis for this action took place.

11. All of the individuals named in this action are sued in their individual capacities. Lenawee County Prosecutor Irv Shaw is also sued in his official capacity as assisting Detective Figurski in the conduct of his so called investigations.

12. This Court has jurisdiction over Counts I, II, III, IV, and V of this action as they arise under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, and thus present a Federal Question pursuant to 42 USC § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

13. The amount in controversy is in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest and attorney fees.

## FACTUAL ALLEGATIONS

14. On or about December 11, 2003, at approximately 5:00 p.m., Lenawee County Sheriff officers attempted to stop a 1986 Buick Century four-door, driven by Jesalynn Simons, now deceased, for a minor traffic violation in the City of Adrian, County of Lenawee, State of Michigan.

15. For reasons unknown, Ms. Simons failed to stop for the Lenawee County Sheriff vehicle and a pursuit ensued. Additional police vehicles from both the Lenawee County Sheriff's Department and the Michigan State Police became involved.

3

16.     During the pursuit certain police vehicles initiated contact with Ms. Simons' vehicle in an attempt to force her vehicle off the road.  While Ms. Simons' vehicle was on the side of the road surrounded by police vehicles, Michigan State Police Trooper David Revard stepped out of his vehicle, drew his gun, and shot Ms. Simons through her vehicle's passenger side front window.  The trooper's bullet entered Ms. Simons' right outer thigh, hitting the right femoral artery and exiting the right inner thigh.  The same bullet then entered Ms. Simons' left thigh and exited at the back of the left thigh area.  Soon after the shooting, Ms. Simons lost consciousness.

17.     Paramedics arrived and Ms. Simons was transported from the scene to a hospital in Toledo, OH in critical condition.

18.     On or about December 12, 2003, at approximately 7:15 a.m., Jesalynn Simons, who never regained consciousness, **expired** as a result of gunshot wounds, inflicted by Trooper Revard.

19.     On or about December 16, 2003, Defendant Figurski, with assistance from and in conspiracy with Defendant Shaw, both knowing Jesalynn Simons was dead, unreasonably sought and obtained a facially invalid search warrant (Exhibit 1) without probable cause for the apartment of Plaintiff Jody Coopshaw and Alexis Page Arecena at 1897 West Maumee Street, Apartment A6, Adrian, MI to conduct an unreasonable general and exploratory search for evidence the Defendants failed to describe with particularity and had no reasonable basis to believe existed.

20.     Defendants Shaw and Figurski relied on a named informant in the affidavit supporting the search warrant.  None of the Defendants ever confirmed the named informant's allegations.  Neither Defendant Shaw nor Defendant Figurski requested or

4

received any documentation confirming that the named informant was who s/he said s/he was. Neither Shaw, Farrell, nor Figurski performed a background check to determine the credibility of the named informant or her allegations. Neither Shaw, Farrell, nor Figurski corroborated or confirmed through any other source any of the information the named informant allegedly gave to Defendant Figurski. The named informant had no personal knowledge of any evidence of a crime at Plaintiff's residence. The named informant had no credibility or reliability as an informant. The Defendants relied on unconfirmed and uncorroborated hearsay information of the named informant. The named informant's information did not provide probable cause to search Plaintiff's home. The named informant, Defendant Farrell, Defendant Figurski, and Defendant Shaw had no knowledge of any connection between Jesalynn Simons' personal effects, including writings, and any alleged crime committed by Jesalynn Simons or anyone else.

21.    Defendants also had no reasonable basis to believe they could charge Jesalynn Simons with any crime because they knew she was dead, nor did Defendants have any reasonable basis to conclude that Jesalynn Simons was part of any ongoing or previously existing criminal enterprise. The search warrant affidavit states that Jesalynn Simons was dead at the time the search warrant was sought (Exhibit 1, page 4). The search warrant also contains a facially invalid 'catch-all' clause that gave officers conducting the search unlimited discretion in determining the items to be searched for and seized. The Defendants' true motive for seeking and executing the search warrant was an attempt to: intimidate and/or harass the Plaintiffs into not filing a civil action related to the death of Jesalynn Simons, attempt to taint the public image of

the Plaintiffs, improve the public image of Defendants and other law enforcement officials and entities, and to search for potentially exculpatory evidence in anticipation of civil litigation. No larger conspiracy or possibility of crimes other than those allegedly involved in the police chase and shooting is sworn to in the search warrant. Jody Coopshaw and Alexis Paige Arecena had clearly established Fourth and Fourteenth Amendment Constitutional rights to be free from an unreasonable search pursuant to a search warrant which was facially invalid, without probable cause and granted broad discretion to executing officers to determine what items they wished to search for or seize. The Defendants' actions were unreasonable and only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing. The Defendants' actions shock the conscience. Plaintiffs Jody Coopshaw and Alexis Arecena also have firmly established First Amendment rights to freedom of association and to petition the Government for a redress of grievances. Defendant's actions in obtaining and executing the search warrant wrongfully interfered with Plaintiffs' exercise of those rights.

22.     According to the search warrant, the property and things to be searched for included:

> Any/all notebooks, journals, diaries, letters, notes, computer based information appearing to belong to Jesalynn Simons, an approximate six inch by six inch black box, and **any other evidence which may explain** the manner in which said vehicle was operated, and/or why the vehicle operator evaded a traffic stop, attempted to flee and elude the police effort to stop the vehicle safely and assaulted police officers with said vehicle.

Exhibit 1, page 1

6

23. On or about December 16, 2003, in the late afternoon, Plaintiffs were attending the funeral of Plaintiff Jody Coopshaw's daughter and Plaintiff Alexis Page Arecena's sister, Jesalynn Simons.

24. On or about December 16, 2003, at approximately 4:45 p.m., Defendant Figurski, Defendant Farrell, several troopers of the Michigan State Police Department, and several officers of local police departments met at the Adrian Michigan State Police Post where they unreasonably discussed, agreed, and conspired to a plan of violating Plaintiffs' Fourth and Fourteenth Amendment rights by unreasonably conducting a search of Plaintiffs' residence pursuant to a facially invalid search warrant.

25. In furthering the conspiracy to violate Plaintiffs' First, Fourth, and Fourteenth Amendment rights, Defendants Figurski and Farrell unreasonably conspired to search for evidence outside the scope of the facially invalid warrant without probable cause by unreasonably agreeing to search for a possible narcotics connection in Plaintiffs' home, despite there being no probable cause or reasonable basis to believe there were any illegal drugs connected with or in the possession of Ms. Simons (deceased) or Plaintiffs.

26. Defendant First Lieutenant Farrell, who was commander of the Adrian Michigan State Police Post where the conspiratorial plan to violate Plaintiffs' First, Fourth, and Fourteenth Amendment rights was devised, not only unreasonably participated in the plan and conspiracy, but also unreasonably expressly approved the operational plan to implement the violation of Plaintiff's rights.

27. On or about December 16, 2003, from approximately 5:30 to 6:15 p.m., while Plaintiffs were attending the funeral for their deceased relative Jesalynn Simons,

7

Defendant Figurski, multiple troopers of the Michigan State Police Department, and multiple officers of local police departments, all of whom acting under the direction of Defendants Figurski and Farrell, executed the unreasonable search without probable cause at Plaintiff's residence located at 1897 West Maumee Street, Apartment A6, Adrian, MI. All of the officers who executed the search warrant and performed any searches, including Detective Figurski, exercised broad discretion to search for "any other evidence which may explain the manner in which said vehicle was operated..." (Exhibit 1, page 1).

28.    Defendant Figurski and others at his direction ransacked Plaintiffs' residence, throwing things about.

29.    Defendant Figurski and others at his direction unlawfully and unreasonably entered and searched throughout Plaintiffs' entire home, including rooms where there was no probable cause to believe that items listed in the search would be found, such as Ms. Coopshaw's bedroom  and bathroom, and personal belongings, including items of personal clothing, hygiene, and medication (officers wrote down the names of prescriptions being taken by Jody Coopshaw),  in a general and exploratory search for any evidence that Defendants might use in future civil litigation and/or to counter adverse publicity over the shooting death of Jesalynn Simons, and to intimidate and harass the Plaintiffs.

30.    Defendant Figurski and others at his direction also unlawfully and unreasonably searched for narcotics.  None were found.

31.    Defendant Figurski, without probable cause, seized personal writings of the deceased Jesalynn Simons and the computer belonging to Plaintiffs which

8

contained their personal information and private writings, interfering with Plaintiffs'
freedom of association with their deceased relative and Plaintiffs' possessory interests
in said property in violation of Plaintiffs' First, Fourth, and Fourteenth Amendment rights.

32.     No evidence of any crime or contraband was ever found.  The items
seized were a notebook marked "Jesa's only" and a Hewlett Packard computer.
Defendant Figurski submitted Plaintiffs' computer to computer forensic expert Charlene
Warner to generally search for information pertaining to suicide intentions, frustration,
anger, hate and any personal journal information or conversations that may have taken
place giving any indication of the state of mind of the deceased Jesalynn Simons. The
search of the computer was also overbroad in that it included searches for "Jody
Coopshaw" and other such searches which were not reasonably related to any crime
and for which there was no probable cause and which violated the privacy of Plaintiff
Jody Coopshaw.  Upon completion of the examination of the digital copy of the Hewlett
Packard computer, there were no files containing the requested information.

33.     Plaintiffs had a legitimate expectation of privacy in the sanctity of their
home and the personal writings and thoughts in the home computer and journal
unlawfully and unreasonably searched for and seized by Defendants, as there is no
objectively reasonable basis that either resident or anyone connected to the resident
had engaged in or had been involved with any crime or contraband of which evidence
could be found at Plaintiffs' residence.  There was no reasonable basis for any officer,
judicial or otherwise, to believe that anything criminal was occurring at Plaintiffs'
apartment.  There was no nexus between the place to be searched, evidence of a
crime, and the arrestee.  The search warrant and affidavit did not connect the searched

9

residence to any alleged illegal activity other than the police chase involving the

deceased Jesalynn Simons and there was no reasonable basis for Defendants Shaw,

Figurski, or Farrell to believe that evidence relating to the chase would be found at

Plaintiffs' apartment, or that any criminal charge could ever grow out of seized evidence.

The search warrant also did not state that a person engaging in illegal activity away

from the residence lived at the searched residence.  There was no probable cause to

believe that a crime was being or had been committed at the residence of Plaintiffs.

There was no fair probability that evidence of a crime would be found at the Plaintiffs'

residence.

## COUNT I

## VIOLATION OF PLAINTIFFS' FIRST, FOURTH, AND FOURTEENTH AMENDMENT RIGHTS

Plaintiffs reallege and reincorporate the paragraphs set forth above as if fully set

forth herein.

34.     Plaintiffs had a clearly established constitutionally protected right to be

free from unreasonable searches of their residence, especially general searches without

probable cause, long held unconstitutional pursuant to the Fourth and Fourteenth

Amendments to the United States Constitution.  Plaintiffs also had clearly established

First Amendment rights of free association and to petition the Government for the

redress of grievances.

35.     Defendants Figurski, Farrell and Shaw deprived Plaintiffs of their First,

Fourth, and Fourteenth Amendment rights, while acting under color of state law, by the

following actions, among others:

10

a.  Knowingly, intentionally, or with reckless disregard for the truth, stating that probable cause for the warrant existed when an objectively reasonable officer in any of the Defendants' positions would have believed probable cause did not exist, due to the death of Jesalynn Simons and the totality of the circumstances as a whole;

b.  Knowingly, intentionally, or with reckless disregard for the truth, seeking said search warrant based on mere suspicion through hearsay information provided by a named informant without credibility or reputation of being a reliable informant, such that no objectively reasonably cautious officer could believe that there was probable cause that the search would uncover evidence of a chargeable crime;

c.  Knowingly, intentionally, or with reckless disregard for the truth, acting unreasonably in wrongfully seeking and securing a search warrant based on inaccurate, inadequate, false information, and an unreliable witness who did not have personal knowledge of the information regarding the items to be sought or their location;

d.  Knowingly, intentionally, or with reckless disregard for the truth, unreasonably seeking a search warrant for Plaintiffs' residence without a particularized and objective basis for the search.

e.  Knowingly, intentionally, or with reckless disregard for the truth, unreasonably including a catch-all clause in the search warrant

which would give officers broad discretion as to what to search for,
failing the particularity requirement of the Fourth Amendment.

f.  Knowingly, intentionally, or with reckless disregard for the truth,
unreasonably seeking a search warrant with the intent to search for
evidence relating to possible civil litigation.

g.  Knowingly, intentionally, or with reckless disregard for the truth,
unreasonably seeking a search warrant with the purpose of
improving the public image of various state officials and entities and
to taint the public image of the Plaintiffs.

h.  Knowingly, intentionally, or with reckless disregard for the truth,
unreasonably seeking a search warrant with the purpose of
searching Plaintiffs' premises in order to intimidate and/or harass
Plaintiffs into not filing a civil claim related to the shooting of
Plaintiffs' relative, Ms. Simons, in violation of the Plaintiffs' First
Amendment right to petition the Government for a redress of
grievances.

i.  Knowingly, intentionally, or with reckless disregard for the truth,
unreasonably seeking a search warrant for the purpose of
interfering with Plaintiffs' First Amendment rights of free
association.

36.  Defendant Figurski deprived Plaintiffs of their First, Fourth, and Fourteenth
Amendment rights, while acting under color of state law, by the following actions,
among others:

12

a.   Acting maliciously, recklessly, and unreasonably under the
circumstances in his execution of the warrant knowing, with
reckless disregard for the truth, or in the exercise of due diligence
should have known, that no probable cause existed for said
warrant.

b.   Acting maliciously, recklessly, and unreasonably under the
circumstances in his execution of the warrant and knowingly,
intentionally, or recklessly inflicting emotional distress upon
Plaintiffs by conducting the unreasonable search during the funeral
of the deceased, Ms. Simons in order to intimidate and/or harass
Plaintiffs into not filing a civil cause of action related to the shooting
of Jesalynn Simons.

c.   Knowingly, intentionally, or with reckless disregard for the truth,
conducted an unreasonable search of Plaintiffs' residence and
property for narcotics for which there was no probable cause and
which were never specified in the warrant.

d.   Knowingly, intentionally, or with reckless disregard for the truth,
conducted an unreasonable and unconstitutional search of
Plaintiffs' residence and property without probable cause and as a
pretext for discovering evidence in anticipation of civil litigation, as a
pretext for improving the public image of state officers, officials, and
entities, as a pretext to intimidate and harass Plaintiffs into not filing

a cause of action related to the shooting of Jesalynn Simons, and
as a pretext for attempting to taint the public image of Plaintiffs.

e.   Knowingly, intentionally, or with reckless disregard for the truth,
violated the sanctity of Plaintiffs' home in an unreasonable search
without probable cause utilizing a catch-all clause.

f.   Knowingly, intentionally, or with reckless disregard for the truth,
conducted an unreasonable seizure of Plaintiffs' property denying
Plaintiffs' their possessory interests in the property.

g.   Knowingly, intentionally, or with reckless disregard for the truth,
utilizing a facially invalid warrant to search generally through
personal belongings of those other than Jesalynn Simons.

37.   There was no objectively reasonable basis for Defendants Shaw, Figurski,
or Farrell to believe that there was probable cause to search Plaintiffs' home. There
was deliberate indifference to the right of Plaintiffs to be free from unreasonable
searches and seizures pursuant to the Fourth Amendment to the U.S. Constitution. The
action of Defendants further shock the conscience by conducting an arbitrary invasion
into Plaintiffs' home and a general or exploratory search of Plaintiffs' premises and
property, specifically banned by the Fourth Amendment to the U.S. Constitution and
abusing the powers granted to police by using the warrant as a pretext for subverting
the judicial process of civil discovery by searching for evidence in anticipation of civil
litigation, to bolster the Defendants' credibility and to intimidate and/or harass the
Plaintiffs into not filing a cause of action related to the shooting of Jesalynn Simons,

14

without regard to the legal limits of police power or the constitutional rights of citizens the Defendants were charged to protect.

38.     As a direct and proximate result of the above-described Defendants' acts and omissions, Defendants deprived Plaintiffs of their right to free association and their right to petition the Government for a redress of grievances under the First Amendment as well as Plaintiffs' right to be free from unlawful and unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

WHEREFORE Plaintiffs respectfully request this Court to find that Defendants deprived Plaintiffs of their right to be free from unreasonable searches and seizures and their right to petition the government for a redress of grievances under the United States Constitution and are liable to Plaintiffs, under 42 U.S.C. § 1983, for all damages arising out of this action, including compensatory and punitive damages, attorney's fees, costs, in any amount over $75,000 which this Court deems appropriate, including but not limited to:

- a.  Pain and suffering, past and future;

- b.  Humiliation, outrage, and embarrassment, past and future;

- c.  Harm to Plaintiffs' reputation as persons of honesty and integrity;

- d.  Mental anguish and emotional distress, past and future;

- e.  Actual and reasonable attorney fees and costs;

- f.  Punitive damages.

## COUNT II

## CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS BY DEFENDANTS COGNIZIBLE UNDER 42 U.S.C. § 1983

15

40.    Plaintiffs reallege and reincorporate the paragraphs set forth above as if fully set forth herein.

41.    Defendants, acting in their individual capacities, and Defendant Shaw acting in his official capacity, under color of state law, having conspired together, reached a mutual understanding and acted to undertake a course of conduct that violated Plaintiffs' civil rights as stated in Count I. Plaintiffs' civil rights were violated under 42 U.S.C § 1983 when Plaintiffs conspired to perform all acts stated in Count I.

42.    Those Defendants who may not have actively participated in the deprivations set forth herein are liable for being part of the conspiracy which violated Plaintiffs' rights as stated in Count I.

43.    As a direct and proximate result of the conspiracy between Defendants as described, Plaintiffs have been deprived of their right to be free from unreasonable and unlawful search and seizure, to equal protection of the laws, and to due process rights to be free from arbitrary and unreasonable action, which are secured under the Fourth and Fourteenth Amendments to the United States Constitution and protected by 42 U.S.C. § 1983.

WHEREFORE Plaintiffs respectfully request this Court to find that Defendants conspired to deprive Plaintiffs of their right to be free from unreasonable searches and seizures, to equal protection of the laws, and to due process rights to be free from arbitrary and unreasonable action, which are secured under the First, Fourth, and Fourteenth Amendments to the United States Constitution and are liable to Plaintiffs, under 42 U.S.C. § 1983, for all damages arising out of this action, including

16

compensatory and punitive damages, attorney's fees, costs, in any amount over

$75,000 which this Court deems appropriate, including but not limited to:

> a. Pain and suffering, past and future;
>
> b. Humiliation, outrage, and embarrassment, past and future;
>
> c. Harm to Plaintiffs' reputation as a person of honesty and integrity;
>
> d. Mental anguish and emotional distress, past and future;
>
> e. Actual attorney fees and costs;
>
> f. Punitive damages.

## COUNT III

### SUPERVISORY LIABILITY OF DEFENDANT STEVEN FARRELL COGNIZIBLE UNDER 42 U.S.C. § 1983

Plaintiffs reallege and reincorporate the paragraphs set forth above as if fully set forth herein.

44.    Defendant Farrell took an active part in the plan and conspiracy to violate Plaintiffs' constitutional rights and encouraged the Defendant Officers' conduct.

45.    Defendant Farrell was reckless or grossly negligent in supervising, approving, and/or encouraging the Defendants' conduct.

46.    Defendant Farrell failed to take any preventative or remedial measures to guard against the conduct of the other Defendants set forth herein. Specifically, Defendant Farrell gave express authorization to violate Plaintiffs' constitutional rights by granting approval of the operational plan to execute the warrant and conduct the unlawful and unreasonable search of Plaintiffs' premises and property.

47.    Had Defendant Farrell taken preventative or remedial measures to guard against the conduct of the other Defendant officers, Plaintiffs would not have suffered

17

the deprivations of their rights fully set forth herein.

48.     The failure of Defendant Farrell to take preventative or remedial measures to guard against the conduct of the other Defendant officers amounted to gross negligence, deliberate indifference, or deliberate misconduct, which directly caused the deprivations suffered by Plaintiffs. Defendant Farrell failed to train, instruct, supervise, and discipline the Defendant officers, and said failure caused Plaintiffs' damages.

49.     As a direct and proximate result of to above-described unlawful and malicious acts of Defendant Farrell, Plaintiffs were deprived of their rights to: petition the Government for a redress of grievances, free association, be free from unlawful and unreasonable search and seizure, to equal protection of the laws, and to Due Process of law, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE Plaintiffs respectfully request this Court to find that Defendant Farrell deprived Plaintiffs of their right to be free from unreasonable searches and seizures, to equal protection of the laws, and to due process rights to be free from arbitrary and unreasonable action, which are secured under the First, Fourth, and Fourteenth Amendments to the United States Constitution and are liable to Plaintiffs, under 42 U.S.C. § 1983, for all damages arising out of this action, including compensatory and punitive damages, attorney's fees, costs, in any amount over $75,000 which this Court deems appropriate, including but not limited to:

a.  Pain and suffering, past and future;

b.  Humiliation, outrage, and embarrassment, past and future;

c.  Harm to Plaintiffs' reputation as a person of honesty and integrity;

18

d.  Mental anguish and emotional distress, past and future;

e.  Actual attorney fees and costs;

f.  Punitive damages.

## COUNT IV

## DEFENDANT SHAW'S VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AND FIRST AMENDMENT RIGHTS OF FREE ASSOCIATION AND TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES

Plaintiff realleges and reincorporates in full the paragraphs above as if set forth in full herein.

51.     Defendant Shaw, acting in his investigative capacity and not in his prosecutorial capacity, knowingly, intentionally, and/or recklessly violated Plaintiff's Fourth Amendment Rights to be free from unreasonable searches and seizures by assisting Defendant Figurski in drafting the search warrant and search warrant affidavit and then approving it.  Defendant Shaw did this in furtherance of a plan to: unreasonably invade the Plaintiffs' home and to search freely through the Plaintiffs' personal belongings in an effort to intimidate and harass Plaintiffs whom they suspected may file a civil action arising from the death of their relative Jesalynn Simons, to bolster Defendants' own credibility and diminish that of Plaintiffs, and to illegally obtain evidence it hoped to use in defense of a civil action arising from the death of Jesalynn Simons.

52.     WHEREFORE Plaintiffs respectfully request this Court to find that Defendant Shaw deprived Plaintiffs of their right to be free from unreasonable searches

19

and seizures, to equal protection of the laws, to the freedom to petition the Government for a redress of grievances, and to due process rights to be free from arbitrary and unreasonable action, which are secured under the First, Fourth, and Fourteenth Amendments to the United States Constitution and are liable to Plaintiffs, under 42 U.S.C. § 1983, for all damages arising out of this action, including compensatory and punitive damages, attorney's fees, costs, in any amount over $75,000 which this Court deems appropriate, including but not limited to:

   g. Pain and suffering, past and future;

   h. Humiliation, outrage, and embarrassment, past and future;

   i. Harm to Plaintiffs' reputation as a person of honesty and integrity;

   j. Mental anguish and emotional distress, past and future;

   k. Actual attorney fees and costs;

   l. Punitive damages.

## COUNT V

## COUNTY LIABILITY FOR THE INDIVIDUAL DEFENDANTS' VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS

Plaintiff realleges and reincorporates in full the paragraphs above as if set forth in full herein.

50. Plaintiffs had a right under the Fourth Amendment of the Constitution of the United States of America to be free from unreasonable searches and seizures.

51.    Defendant, Lenawee County, deprived Plaintiffs of their Fourth Amendment rights, while acting under color of state law, by the following actions, among others:

a.    Failing to properly establish a training program and/or train and supervise its officers and employees, including Defendant Shaw, as to the proper procedures for handling usual and recurring situations with which officers and prosecutors must deal, including but not limited to:

i. Obtaining search warrants

ii. Executing search warrants

iii. Refraining from all of the unlawful acts heretofore alleged by Plaintiffs

b.    Failing to establish or create appropriate policies and/or procedures for police officers to employ as to the proper procedures for handling usual and recurring situations with which officers and prosecutors must deal, including but not limited to:

i. Obtaining search warrants

ii. Executing search warrants

iii. Refraining from all of the unlawful acts heretofore alleged by Plaintiffs

c.    Alternatively, if at the time the search warrant was sought and executed it was the policy of Lenawee County to utilize catch-all clauses and allow searches without probable cause and for the reasons as herein alleged by Plaintiffs, as here where the alleged target of the investigation is deceased and civil litigation may ensue, then Lenawee County is liable to Plaintiffs for having such policy.

52. The actions of the Defendant Lenawee County in failing to train its police officers and prosecutors, including Defendant Shaw, and/or to establish policies and procedures in the ways set forth above in its unconstitutional policy and/or culture, resulted in a deprivation of Plaintiffs' Fourth and Fourteenth Amendment constitutional rights to be free from unreasonable searches and seizures.

53. As a direct and proximate result of the above-described acts and omissions, Plaintiffs' First Amendment right to free association and to petition the Government for a redress of grievances and Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures were violated, resulting in serious and permanent injuries to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court to find that Defendant Lenawee County deprived Plaintiffs of their rights to: be free from unreasonable searches and seizures, equal protection of the laws, free association, petition the Government for a redress of grievances, and to due process rights to be free from arbitrary and unreasonable action, which are secured under the First, Fourth, and Fourteenth Amendments to the United States Constitution and are liable to Plaintiffs, under 42 U.S.C. § 1983, for all damages arising out of this action, including compensatory and punitive damages, attorney's fees, costs, in any amount over $75,000 which this Court deems appropriate, including but not limited to:

      a. Pain and suffering, past and future;

      b. Humiliation, outrage, and embarrassment, past and future;

      c. Harm to Plaintiffs' reputation as a person of honesty and integrity;

      d. Mental anguish and emotional distress, past and future;

e.  Actual attorney fees and costs;

f.  Punitive damages.

Respectfully submitted,

MORGAN & MEYERS, PLC

BY _____

Courtney E. Morgan, Jr. (P29137)
Brian J. Nagy (P65542)
Attorney for Plaintiffs
3200 Greenfield, Suite 260
Dearborn, MI  48120-1802
(313) 961-0130

DATED:  July 18, 2006

23

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

JODY LYNN COOPSHAW, and
ROBERT LARRY THORNTON,
as Next Friend of ALEXIS PAIGE
ARECENA, a Minor

                Plaintiff,

v.

DETECTIVE SERGEANT JOHN
FIGURSKI, individually, of the Michigan
State Police; FIRST LIEUTENANT
STEVEN FARRELL, individually, of the
Michigan State Police;
IRV SHAW, officially and individually, of
the Lenawee County Prosecutor's
Office; and
LENAWEE COUNTY

                Defendants.

Case No.
Honorable

_____/

Courtney E. Morgan, Jr. (P29137)
Brian J. Nagy (65542)
Attorneys for Plaintiffs
Morgan & Meyers, PLC
3200 Greenfield, Suite 260
Dearborn, MI  48120-1802
(313) 961-0130

_____/

## DEMAND FOR TRIAL BY JURY

NOW COMES the above-named Plaintiffs, Jody Coopshaw and Robert Larry

Thornton, as next friend of Alexis Page Arecena, by and through their attorneys,

MORGAN & MEYERS, and hereby demand a trial by jury in connection with the above-

captioned matter.

Respectfully Submitted,

MORGAN & MEYERS, PLC

By:

Courtney E. Morgan, Jr. (P29137)
Jeffrey T. Meyers (P34348)
Brian J. Nagy (65542)
Attorneys for Plaintiffs
3200 Greenfield, Suite 260
Dearborn, MI  48120-1802
(313) 961-0130

Dated:        July 18, 2006

Page 1
State of Michigan
                    SS
County of

## SEARCH WARRANT

To the Sheriff or any peace officer of said county: _D/SGT FIGURSKI_ Affiant, having subscribed and sworn to an affidavit for a Search Warrant, and I having under oath examined affiant, am satisfied that probable cause exists:

THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I command that you search the following described place:

The apartment/residence of Jesalynn Simons and her mother, Jody Coopshaw, located at 1897 West Maumee Street , Apartment #A6, West Terrace Apartments, Adrian, Michigan.

and to seize, secure, tabulate and make return according to law the following property and things:

Any/all notebooks, journals, diaries, letters, notes, computer based information appearing to belong to Jesalynn Simons, an approximate six inch by six inch black box , and any other evidence which may explain the manner in which said vehicle was operated, and /or why the vehicle operator evaded a traffic stop, attempted to flee and elude the police effort to stop the vehicle safely and assaulted police officers with said vehicle.

Approved:

_____
Assistant Prosecuting Attorney

_____
Judge / Magistrate

_Lenawee_ County Michigan

2003

EXHIBIT
ALL-STATE® INTERNATIONAL

0233



Page 2
State of Michigan
                   SS
County of

## RETURN and TABULATION

1 — HEWLETT PACKARD
    HP PAVILLION  XG833
    SYSTEM NUMBER — P3987A
    SERIAL NUMBER — MX10808292
    HARD DRIVE.

1 — RED NOTEBOOK 10 1/2" X 8"
    COLLEGE RULE, 70 sheets
    MARKED " JESA'S ONLY"

**0234**

Continued on reverse side? _____

Officer

Witness

18-7991-09

Page 3
State of Michigan
                    SS
County of

COPY of search warrant and tabulation served on _Kitchen Table 12-16-03_
Date tabulation filed: _12-17-03_                                    Date
                        _via Court order Trooper Northrup_

## AFFIDAVIT FOR SEARCH WARRANT

**The following facts are sworn to by affiant in support of the issuance of this warrant :**

1. Affiant is a Detective Sergeant with the Michigan State Police currently assigned to the Adrian Post and has thirteen years of law enforcement experience.

2. Affiant is investigating a shooting incident involving a 1986, Buick, Century, four door, bearing Michigan registration XFC533, tan in color, registered to Robert and Lillian Thornton, 365 March Dr. Adrian, Michigan.

3. The preliminary investigation indicates that at about 5:00PM this dated, 12/11/03, a Lenawee County Deputy Sheriff, on routine patrol, sighted the vehicle above described. Said vehicle was being operated by it only occupant, now identified as Jesalynn Rene Simons, dob:9/5/1985. The vehicle was then located on northbound M-52 near Cutis Road in Adrian Township, Lenawee County, Michigan.

4. Affiant was informed by said officer that the vehicle came to his attention because one of the vehicle headlamps was not functioning, the vehicle was straddling the two northbound lanes, then weaved within the east northbound lane, and that he attempted to stop said vehicle by activating his marked patrol car emergency lights and siren.

5. He further reports that the driver and sole occupant of said vehicle responded by turning south on Howell Highway and accelerating in an effort to flee, at which time the deputy called for assistance.

6. Officer reports to affiant that the pursuit continued over a distance of 1 mile or more to a point where said vehicle was fleeing westbound on US-223 near Wolf Creek Highway, with the original sheriff patrol car and three other marked patrol vehicles in pursuit, and that the operator of the vehicle was still operating said vehicle in a reckless and dangerous manner, and at that point all four vehicles were using their emergency lights and sirens in an effort to stop the fleeing vehicle.

7. Affiant has seen a video recording taken by a camera on-board one of the pursuing patrol vehicle. The video indicates to affiant that the officers were then attempting to stop said vehicle by maneuvering their vehicles so as to partially box-in the fleeing vehicle and east it safely off the highway. The video shows considerable other traffic and indicates, generally, a very dangerous situation.

8. The video further indicates to affiant that Simons was still fleeing and eluding and swerved her vehicle into contact one of the police cars, and that this action on her part resulted in a situation

Page 4
State of Michigan
                    SS
County of

9. The video further indicates to affiant that Simons then began using her vehicle in a forward and reverse motions in an apparent effort to strike police vehicles and/or police officers, some of whom, by this point, were out of their vehicles and on foot. Further, the video indicates to affiant that State Police Trooper Rivard's position was on foot within a few feet of the right front door of the said vehicle, and he was nearly struck or run down by the operation of said vehicle by Jesalynn Simons, and that as Trooper Rivard moved to avoid being hit, he fired his service pistol at the right front door of said vehicle.

10. Affiant has been informed that the driver, Simons, was struck in the legs by said shot. The video indicates that the result was that there was no further effort to flee or assault officers.

11. Jesalynn Simons was treated at the Medical College of Ohio, and apparently died as a result of wounds, her vehicle is under impoundment.

12. Rosalynda Martinez-Faz informed your affiant that she was Jesalynn Simons legal guardian for approximately one year prior to Jesalynn's 17th birthday. Jesalynn Simons lived with Martinez - Faz several times during that time.

13. Affiant was informed by Martinez – Faz that Jesalynn Simons had a "really bad Temper". Martinez – Faz stated she taught Jesalynn Simons to write her frustration down in a journal in an effort to control her anger. Jesalynn Simons told Martinez - Faz she wrote in her journal every day. Martinez –Faz witnessed Simons making the said entries in her journal on several occasions.

14. Affiant was informed by Martinez - Faz that she spoke to Jesalynn Simons approximately three weeks prior to 12-11-03. Simons advised Martinez – Faz she was depressed, suicidal, had recently quit her job, and had no money. Martinez - - Faz advise your affiant that Simons had also talked of suicide on past occasions.

15. Affiant was advised by Martinez – Faz that she spoke to Jesalynn Simons on 12-8-03 via telephone. Simons advised Martinez – Faz she was depressed and "frazzled" to the point were she could not think straight, and asked Martinez – Faz for approximately $500.

16. Affiant was informed by Martinez –Faz that Jesalynn Simons contacted her from Jody Coopshaw's residence via telephone on 12-10-03. During the conversation Simons told Martinez –Faz she had made entries into her journal that day. Simons also agreed to meet with Martinez – Faz on 12-16-03 at the Adrian Fazolis to discuss her current frustrations. Simons told Martinez – Faz she would bring her journal to the meeting.

17. Martinez –Faz informed your Affiant that Jesalynn Simons told her she kept her current journal between the mattresses of her bed and kept the completed editions of her journal in a white clothes hamper. Simons also retained numerous letters , notes, etc she considered significant in the above described black box.

18. Affiant was informed by Larry Thornton, Jesalynn Simons' grandfather, that Jesalynn had moved into her mother's, Jody Coonshaw's, apartment several weeks prior to 12-11-03.

Page 5
State of Michigan
                              SS
County of

Thornton advised Jody Coopshaw lives in an apartment building located near the scene of the
shooting incident, believed to be the West Terrace Apartment complex.

19. Affiant was informed by the owner of the West Terrace Apartment complex, Katherine Tipton,
    that Jody Coopshaw was one of her tenants and was currently living at 1897 W Maumee
    Apartment #A6, Adrian , Michigan.

20. Affiant seeks warrant to search said apartment for the reasons set forth above in an effort to
    determine with the most positive certainty what factors lead to the above incident and what
    crimes may have been committed and the reasons therefor.

21. Further Affiant sayeth not.

_____
                 Affiant

**Approved :**

_____            _____    Dec 16, 2003
Assistant Prosecuting Attorney        Judge/Magistrate              Date

```
Sub Acct                    Amount
1:886900  N      :          60.00
2:516000  N      2         190.00
          N      2         100.00

Total                      ???.??
```

NEW CASE No.

Check No.  2570
Amount$   250.00
```

JS 44 (Rev. 11/04) **CIVIL COVER SHEET** County in which this action arose  LENAWEE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

JODY LYNN COOPSHAW, and ROBERT LARRY THORNTON as Next Friend of ALEXIS PAIGE ARECENA, a minor

**DEFENDANTS**

DETECTIVE SERGEANT JOHN FIGURSKI, FIRST LIEUTENANT STEVEN FARRELL, IRV SHAW, COUNTY OF LENAWEE

**(b)** County of Residence of First Listed Plaintiff  Lenawee
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Lenawee
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Courtney E. Morgan, Jr. (P29137)
3200 Greenfield Road, Suite 260
Dearborn, MI 48120   313-961-0130

Case: 2:06-cv-13246
Assigned To: Borman, Paul D
Referral Judge: Scheer, Donald A
Filed: 07-18-2006 At 03:03 PM
CMP COOPSHAW, ET AL V FIGURSKI, ET AL (EW)

**II. BASIS OF JURISDICTION** (Select One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Select One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 1983

Brief description of cause:
Illegal search violating 4th Amendment

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE
July 18, 2006

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.      Is this a case that has been previously dismissed?          ☐ Yes
                                                                    ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.      Other than stated above, are there any pending or previously
        discontinued or dismissed companion cases in this or any other      ☐ Yes
        court, including state court? (Companion cases are matters in which  ☑ No
        it appears substantially similar evidence will be offered or the same
        or related parties are present and the cases arise out of the same
        transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :